UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Frances Monteleone, Linda Rodriguez,
Elyse Scileppi, Frank J. Monteleone, and    CV-08-1986(CPS)(SMG)
Wendy Monteleone,

                          Plaintiffs,        AMENDED
                                             MEMORANDUM
                                             AND ORDER

        - against -


The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                          Defendants.
----------------------------------------X
Margaret Schaefer Barglow, Raymond
Barglow, Pamela Montanaro, Siri Scull,       CV-08-2131(CPS)(SMG)
Charles Scull, Robert Wolfson, and Mahalia
Pugatch,

                          Plaintiffs,


        - against -


The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                          Defendants.
----------------------------------------X
Gene Bianco and Anita Bianco,

                                             CV-08-3033(CPS)(SMG)

                          Plaintiffs,


        - against -


The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,


                          Defendants.
----------------------------------------X

```
-----------------------------------------X
Philip M. Bray, Ingrid V Noreiko-Bray,
individually and as trustee for Noray        CV-08-2247(CPS)(SMG)
Charitable Remainder Unitrust, and Label
Services, Inc.,

                        Plaintiffs,

        - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                        Defendants.
-----------------------------------------X

Carl Gambello, Carole Gambello, and
Adele Disarmato,                             CV-08-3129(CPS)(SMG)
                        Plaintiffs,

        - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                        Defendants.
-----------------------------------------X
Miriam B. Greenberger,
                                             CV-08-4123(CPS)(SMG)
                        Plaintiff,

        - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                        Defendants.
-----------------------------------------X
```

```
----------------------------------------X
Amadeo Delmonaco, Piedad Delmonaco
Michelle Delmonaco, Brandon Delmonaco,        CV-08-4605(CPS)(SMG)
Nicole Delmonaco, Rosa Armetta, Karamchad
Balkaran, Gino Citro, Steven Doyle, Keith
Pennington, Joseph Fontana, Marco Fontana,
Nunzio Fontana, David Breiner, Marc
Kowalski, George Trivino, German Valdavia,
and Mazine Albert,

                    Plaintiffs,

        - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                    Defendants.
----------------------------------------X
Ann Marie Delia, William Delia, Robert
Sweeney, Veronica Sweeney, Tara Sroka            CV-08-4758(CPS)(SMG)
f/k/a/ Tara Sweeney, and Ludvig Haugedal,

                    Plaintiffs,

        - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                    Defendants.
----------------------------------------X
```

```
----------------------------------------X
Brian Marchese, Ruth Marchese, and
Michael Marchese                          CV-08-4786(CPS)(SMG)

                    Plaintiffs,

         - against -

The Leverage Group, Leverage Option
Management Co., Inc., Leverage Management
LLC, North American Financial, Philip
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                    Defendants.
----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiffs Frances Monteleone ("Monteleone"), Margaret
Shaefer Barglow ("Barglow"), Carl Gambello ("Gambello"), Miriam
Greenberger ("Greenberger"), Philip Bray ("Bray"), Amadeo del
Monaco ("Monaco"), Gene Bianco ("Bianco"), the Estate of William
A. Delia ("Delia"), and Brian Marchese ("Marchese"), among others[1]
(collectively, "plaintiffs"), commenced actions against defendants
the Leverage Group ("Leverage Group"), Leverage Option Management

---

[1] The full list of plaintiffs is as follows: Frances Monteleone, Linda
Rodriguez, Elyse Scileppi, Frank J. Monteleone, Wendy Monteleone (the
"Monteleone plaintiffs"); Margaret Schaefer Barglow, Raymond Barglow, Pamela
Montanaro, Siri Scull, Charles Scull, Robert Wolfson, Mahala Pugatch (the
"Barglow plaintiffs"); Gene Bianco, Anita Bianco (the "Bianco plaintiffs");
Carl Gambello, Carole Gambello, Adele Disarmato (the "Gambello plaintiffs");
Miriam Greenberger (the "Greenberger plaintiff"); Philip M. Bray, Ingrid
Noreiko-Bray, Label Service, Inc., Noray Charitable Remainder Unitrust (the
"Bray plaintiffs); Amadeo Delmonaco, Piedad Delmonaco Michelle Delmonaco,
Brandon Delmonaco, Nicole Delmonaco, Rosa Armetta, Karamchad Balkaran, Gino
Citro, Steven Doyle, Keith Pennington, Joseph Fontana, Marco Fontana, Nunzio
Fontana, David Breiner, Marc Kowalski, George Trivino, German Valdavia, Mazine
Albert (the "Delmonaco plaintiffs"); Ann Marie Delia, William Delia, Robert
Sweeney, Veronica Sweeney, Tara Sroka f/k/a/ Tara Sweeney, Ludvig Haugedal
(the "Delia plaintiffs"); Brian Marchese, Ruth Marchese, and Michael Marchese
(the "Marchese plaintiffs").

Co., Inc. ("Leverage Option Management"), Leverage Management, LLC

("Leverage Management"), North American Financial ("North

American"), Philip Barry ("Barry"),[2] and Philip Barry, LLC

("Barry, LLC")[3] (collectively, "defendants"). These cases were

consolidated for pretrial purposes on November 17, 2008. On

December 24, 2008, all plaintiffs filed an Amended Consolidated

Complaint, which included the following additional defendants:

Saint Joseph's Development Corporation and HK Holdings, LLC.[4] The

Amended Consolidated Complaint listed the following causes of

action: (1) violation of federal securities law, 15 U.S.C. §§

78c(a)(10), 78j(b) and S.E.C. Rule 10b-5; (2) violation of New

Jersey securities law, N.J.S.A. 49:3-17; (3) violation of Federal

RICO, 18 U.S.C. 1962(c); (4) Federal RICO conspiracy, 18 U.S.C.

1962(d); violation of New Jersey RICO, N.J.S.A. 2C:41-2(c); (6)

New Jersey RICO Conspiracy, N.J.S.A. 2C:41-2(d); (7) fraud; (8)

conversion; (9) negligent misrepresentation; (10) breach of

---

[2]On November 7, 2008, all proceedings against defendant Barry were stayed by the Bankruptcy Court. On November 20, 2008, Barry, LLC filed for bankruptcy. On January 21, 2009, the Barry, LLC action was dismissed by the Bankruptcy Court. On January 23, 2009, the Bankruptcy Court lifted the stay as to Barry. The motions for summary judgment addressed in this opinion were heard on December 18, 2008. Because defendants Barry and Barry, LLC were not parties to that proceeding, Barry and Barry, LLC are not considered defendants for the purposes of these motions. However, the discussion below describes Barry's involvement in actions complained of by plaintiffs both for completeness and also because plaintiffs have made a reverse veil-piercing claim.

[3]See previous note.

[4]Saint Joseph's Development Corporation and HK Holdings, LLC have not yet appeared in this case. Plaintiffs added these defendants to their complaint after the summary judgment motions were heard. Accordingly, these defendants will not be discussed further in this opinion.

fiduciary duty; (11) breach of contract; (12) breach of implied
covenants of good faith and fair dealing; and (13) unjust
enrichment. Plaintiffs seek compensatory, consequential, and
punitive damages, attorneys' fees, and costs. Now before the Court
are Greenberger, Gambello, Bray, Bianco, Barglow, and Monteleone's
motions for partial summary judgment as to liability on the claims
for fraud, conversion, breach of contract, breach of covenant of
good faith and fair dealing, unjust enrichment, misrepresentation,
and breach of fiduciary duty.[5] In addition, plaintiffs have made
motions for partial summary judgment on both liability and
damages. For the reasons set forth below, the motions are granted.

**BACKGROUND**

The reader's familiarity with the details of the plaintiffs'
claims and prior procedural history of this case is assumed.[6] The
following facts underlying the liability claims are drawn from the
pleadings and affidavits in connection with these motions.

---

[5]Plaintiffs submitted six separate motions for summary judgment before
the cases were consolidated. Not all claims alleged in the consolidated
complaint were discussed in the motions for summary judgment. Pursuant to the
Consolidation Order, I treat the five motions for summary judgment as having
been submitted on behalf of all plaintiffs, and will address each of the
claims jointly below.
   The Del Monaco plaintiffs have also submitted a motion for summary
judgment, made returnable on February 2, 2009. The Delia and Marchese
plaintiffs have not yet moved for summary judgment.

[6]*See* this Court's opinions on plaintiffs' motions for attachment.
*Monteleone v. Leverage Group*, 2008 U.S. Dist. LEXIS 78983 (E.D.N.Y. October 7,
2008); *Bray v. Leverage Group*, 2008 U.S. Dist. LEXIS 92383 (E.D.N.Y. November
4, 2008).

*The Parties*

Defendant Barry is a citizen of New York and resides in Brooklyn, New York. Defendant The Leverage Group is an unincorporated business entity with its place of business also at 477 82nd street, Brooklyn, New York. Defendant Leverage Option Management Co., Inc., is a New York State business corporation with its place of business at 477 82nd street, Brooklyn, New York. Defendant Leverage Management LLC is a New York State limited liability corporation with its place of business at 477 82nd street, Brooklyn, New York. Defendant North American Financial is an unincorporated business entity with its place of business at 477 82nd street, Brooklyn, New York. Defendant Philip Barry LLC is a New York State limited liability corporation with its place of business at 477 82nd street, Brooklyn, New York. Defendant Barry is the sole owner, officer and shareholder of Leverage Option Management Co., Inc., Leverage Management LLC and Philip Barry LLC. Defendant is also the sole owner of The Leverage Group and of North American Financial (which is an alias of The Leverage Group).

Plaintiffs are persons and entities who at various times over the past twenty years invested in entities owned and operated by defendants.

*The Investment Scheme*

At various points in the last twenty years, plaintiffs began

investing their money with defendant Barry and his companies.[7] In each instance, Barry represented to the investor that he or she would receive an interest rate of 12.55% on any investment made with him, that the principal could not decrease, and that the investor could remove his or her funds at any time.[8] Investors opened investment accounts by making initial deposits, whereupon they were assigned account numbers.[9] Thereafter, investors received quarterly statements, which also indicated that the interest on the investments would be 12.55%.[10] These statements indicated that the investments were growing at the promised rate.[11] Many plaintiffs continued to invest funds, resulting in several individual accounts containing hundreds of thousands of dollars.[12] At various points in the past year, plaintiffs attempted to remove

---

[7]Declaration of Miriam Greenberger at ¶ 3 ("Greenberger Decl."); Declaration of Carl Gambello at ¶ 7 ("Gambello Decl."); Affidavit of Philip Bray at ¶ 3 ("Bray Aff."); Complaint filed by Monteleone et al. on May 14, 2008 at ¶ 13 ("Monteleone Compl."); Complaint filed by Bianco et al. on July 23, 2008 ¶ 10 ("Bianco Compl."); Complaint filed by Barglow et al. on May 27, 2008 at ¶ 15 ("Barglow Compl."). Facts in the Monteleone, Barglow, and Bianco complaints have been verified by affidavits signed by each of the respective plaintiffs.

[8]Greenberger Decl. at ¶ 5;  Gambello Decl. at ¶¶ 8-9; Monteleone Compl. at ¶ 14; Bray Aff. at ¶¶ 6, 7; Bianco Compl. at ¶¶ 11; Barglow Compl. at ¶ 16.

[9]Greenberger Decl. at ¶ 7; Gambello Decl. at ¶¶ 7-8; Monteleone Compl. at ¶ 15; Bray Aff. at ¶ 9; Bianco Compl. at ¶ 12; Barglow Compl. at ¶ 17.

[10]Greenberger Decl. at ¶ 11; Gambello Decl. at ¶ 13; Monteleone Compl. at ¶¶ 14, 16-17; Bianco Compl. at ¶ 13.

[11]Greenberger Decl. at ¶ 12; Gambello Decl. at ¶ 13; Bray Aff. at ¶¶ 9, 10, 12, 13.

[12]Greenberger Decl. at ¶ 30; Gambello Decl. at ¶¶ 14, 16; Monteleone Compl. at ¶ 20; Bianco Compl. at ¶ 13.

their funds from the investment accounts, but were unsuccessful.[13]
Defendant Barry either made representations to the plaintiffs
about why the money was not available, or simply refused to return
the funds.[14]  Barry refused to show some plaintiffs any
documentation concerning how the money was invested.[15] Plaintiffs
thereafter commenced legal action to recover the funds.

*Procedural History*

Plaintiffs initiated the first of these actions in May and
July of 2008. On August 11, 2008 Judge Mauskopf issued a
preliminary injunction in the *Gambello*, *Barglow* and *Monteleone*
cases, enjoining defendants from transferring or otherwise
disposing of any of their assets without an order of the Court,
and ordered expedited discovery. Judge Mauskopf found that there
had been a pattern of misrepresentation, based on her finding that
defendant Barry transferred real property, purchased with
investment funds belonging to plaintiffs, from himself to a new
entity, Philip Barry LLC, and based on the fact that money in all
three actions was unaccounted for even after repeated demands for
the money or for an accounting of the money. Transcript of Hearing
Before Judge Mauskopf at p. 49. Judge Mauskopf found that there

---

[13]Greenberger Decl. at ¶¶ 19-21; Gambello Decl. at ¶ 18; Monteleone
Compl. at ¶ 20; Monteleone Statement of Material Facts Ex. A; Bray Aff. at ¶¶
19-21; Bianco Compl. at ¶¶ 16-17; Barglow Compl. at ¶ 19.

[14]Greenberger Decl. at ¶ 21; Gambello Decl. at ¶ 22; Monteleone Compl.
at ¶ 21; Bray Aff. at ¶ 20-21; Barglow Compl. at ¶ 20.

[15]Greenberger Decl. at ¶ 25; Declaration of Carol Gambello at ¶ 21.

was a risk of continued dissipation of assets because of evidence
that the investors' money had been used to purchase a building in
Kings County that is the defendants' place of business, and to
make mortgage payments, and to pay for defendant Barry's personal
expenses. *Id*. at p. 49, 50.

On October 7, 2008, I granted plaintiffs' motion to attach
certain assets belonging to defendants in the *Monteleone*,
*Gambello*, *Bianco*, and *Barglow* actions. On November 2, 2008, I
granted plaintiffs' motion for attachment in the *Greenberger* and
*Bray* actions. On November 17, I ordered that all cases be
consolidated for pretrial purposes, without prejudice to separate
trials on the individual complaints. On November 21, 2008, the *del
Monaco* case was transferred to me as related to the other cases in
the consolidated action. On November 24, 2008, the Delia case was
transferred to me as a related case. The Marchese action was filed
on November 26, 2008 and has not yet been transferred to me.
However, the Marchese claims are included in the Amended
Consolidated Complaint, which was filed on December 24, 2008. The
*Monteleone*, *Greenberger*, *Bianco*, *Barglow*, *Bray*, and *Gambello*
plaintiffs have all filed motions for summary judgment, which are
treated as if filed on behalf of all plaintiffs pursuant to the
consolidation order, and will be addressed together in this
opinion.

## DISCUSSION

### I. Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The

non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## II. Reverse Veil Piercing

Plaintiffs argue on a reverse veil-piercing theory that they are entitled to summary judgment against certain defendant companies who did not directly participate in certain actions. Under New York law, "a plaintiff seeking to pierce the corporate veil must prove both complete domination and that the domination was used to commit a fraud with respect to the transaction at issue." *Mars Electronics of N.Y., Inc. v. U.S.A. Direct, Inc.*, 28 F.Supp.2d 91, 97 (E.D.N.Y.1998); accord *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir.1997). Piercing analysis is typically used to hold individuals liable for the actions of a corporation that they control. *See American Fuel*

*Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 133 (2d Cir. 1997).

New York law also recognizes "reverse piercing," which seeks to hold a corporation accountable for actions of its shareholders. *See American Fuel Corp*, 122 F.3d at 133. In a reverse veil-piercing claim, the plaintiff must allege that the owner exercised domination over the corporation and that the domination was used to commit a fraud or wrong. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 295 F.Supp.2d 366, 379 (S.D.N.Y. 2004) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). Courts apply the equitable factors used in veil piercing claims in the reverse veil-piercing context. *JSC*, 306 F.Supp.2d. at 485-86. Courts apply the same veil-piercing analysis to LLC defendants as to corporations. *See MAG Portfolio Consult, GmbH v. Merlin Biomed Group*, LLC, 268 F.3d 58, 63-64 (2d Cir. 2001).

The equitable factors considered by courts in veil-piercing and reverse veil-piercing claims are: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers

of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 139 (2d Cir. 1991).

All corporate defendants in this case share the same address with Barry, at 477 82nd street, Brooklyn, New York. No corporate defendant has any manager, directors, or owners other than Barry. Plaintiffs have submitted bank records showing that Barry took funds from Leverage Option Management and Leverage Management, LLC for his own purposes. *See* Gambello Memorandum in Support of Motion for Summary Judgment at 9-12. There is no evidence that any corporate defendant operated independently of Barry in any way. Defendant Barry does not dispute that he completely dominates these companies as the sole shareholder and the only officer and director. Therefore, reverse veil-piercing with respect to all corporate defendants is appropriate. Claims that can be successfully made against Barry and Philip Barry, LLC, who are currently not a defendant in this action, create liability for the

Leverage Group, Leverage Option Management, Leverage Management
LLC, and North American Financial.

**III. The Claims**

Defendants have not disputed any of the following claims, and
have offered no facts in any of their pleadings that, if believed,
would entitle defendants to a verdict in their favor. Defendants
have filed opposition to the plaintiffs' summary judgment motions,
but have limited themselves to the argument that summary judgments
were premature (as of September 30, 2008, when the opposition was
filed), as no discovery had yet been conducted. To support this
argument, defendants supplied an affidavit stating that papers
formerly held by defendants that contained information about all
possible claimants against defendants had been given over to the
United States Attorney's Office and was thereafter unavailable to
defendants. Affidavit of Phillip Barry at ¶¶ 6, 7. Defendants
stated that they sought "all of the defendants' clients'
information so that [they would] be able to show that the
plaintiffs are among at least four hundred fifty persons who have
invested monies with, or loaned moneys to the defendants, and that
there is an issue of fact and a clear dispute as to who is
entitled to a share of assets owned or controlled by defendants."
*Id*. at ¶ 17. The issue of the identities of other potential
plaintiffs against defendant is not a material fact for trial on
liability, nor does it have any bearing on the amount of damages

due in a judgment. Defendants are not entitled to a denial of summary judgment on liability or damages pursuant to Federal Rule of Civil Procedure 56(f).[16]

## A. Fraud

In order to establish a prima facie case for fraud under New York law, a plaintiff must prove five elements: 1) a representation of material fact; 2) that was false; 3) scienter; 4) reliance by the plaintiff; and 5) injury. *See Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116, 585 N.E.2d 377, 578 N.Y.S.2d 128 (1991).

Barry and the Leverage Group made numerous false material representations about the success of investments in the Leverage Group and failed to disclose material information about plaintiffs' investments. As plaintiffs' declarations and defendants' written representations attest, defendants promoted the Leverage Group, both in their written materials and Barry's oral statements, as a safe investment with a guaranteed investment return of 12.55% annually. Barry and the Leverage Group falsely represented, in the written materials provided to plaintiffs, that each investor in the Leverage Group had a separate account in his or her own name (identified in the letter agreement and the

---

[16]The Rule states: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discover to be undertaken; or (3) issue any other just order."

quarterly statements), and that investors would be able to withdraw from these accounts at any time in the future if they wished to do so. When various plaintiffs later attempted to withdraw money, they discovered that they could not do so, and the money was gone.

Moreover, Barry and the Leverage Group failed to disclose to plaintiffs that the money they deposited with the Leverage Group, by means of checks written to Leverage Option Management, would be used by Barry for his personal benefit, including the acquisition of real estate, paying the costs of his mortgage payments, writing checks to "cash," and paying personal expenses.

The undisputed facts also demonstrate that Barry and the Leverage Group acted with the requisite intent to deceive, as evidenced by the use of multiple corporate entities formed to receive investor funds, whose accounts were used by Barry for his personal expenses. When plaintiffs inquired about the state of their investment accounts after investment-gain checks bounced, defendants made excuses, which caused plaintiffs to delay in taking action to protect their assets.

It is undisputed that plaintiffs relied on the oral and written representations made by Barry on behalf of defendants and the omission of any disclosure that the investor funds would be used for personal purposes. If plaintiffs had known that investor funds were not being used for legitimate investments, they would

not have invested in the defendant companies.

Additionally, it is undisputed that plaintiffs have shown injury. Plaintiffs' investment funds have evaporated, making it impossible for them to recover their money. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did not commit fraud. Accordingly, plaintiffs motion for summary judgment on their fraud claim is granted.

**B. Conversion**

In order to establish a prima facie case for conversion, plaintiffs must show that (1) they have legal ownership or an immediate superior right of possession to a specifically identified thing; and (2) the defendant exercised unauthorized dominion over the thing in question to the exclusion of plaintiffs' rights. *Capital Distribution Servs. v. Ducor Express Airlines, Inc.*, 440 F.Supp.2d 195, 207-08 (E.D.N.Y. 2006). "When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Id*.

Plaintiffs have legal ownership over the funds that they deposited with defendants. Plaintiffs provided these funds for the purpose of making investments. Barry, Leverage Option Management, and Leverage Management LLC used these funds for an unauthorized purpose when the bank accounts of Leverage Option Management and Leverage Management LLC were used to make mortgage payments on

Barry's behalf and to make cash withdrawals. The use of the funds for these purposes operated to the exclusion of plaintiffs' rights. Barry, Leverage Option Management, and Leverage Management LLC continue to exercise unauthorized dominion over plaintiffs' funds, despite plaintiffs' superior rights of possession over their funds. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did not commit conversion. Accordingly, plaintiffs motion for summary judgment on their conversion claim is granted.

## C. Breach of Contract

In order to establish a prima facie case for breach of contract, plaintiffs must establish that (1) a contract existed between the parties; (2) plaintiff has in all respects complied with his or her obligations; (3) defendant failed to perform its obligation under the contract; and (4) plaintiff has been damaged as a result of defendant's actions. *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 450 (S.D.N.Y. 2005) (citations omitted). Each of the plaintiffs had an agreement with Barry and the Leverage Group, which was memorialized in a letter confirming that an account was opened that was provided to each plaintiff. The letter stated that plaintiffs' investment funds would be kept in discrete, identifiable, numbered accounts that were separate from defendants' personal assets, that the

investments would generate a guaranteed annual yield of 12.55%, that the principal would never decrease, and that plaintiffs' funds would be returned upon demand. Plaintiffs had no other obligations than to tender the investment funds. Barry and the Leverage Group failed to perform their obligations under the agreement when they used investor money for reasons other than investing pursuant to the agreement and when they failed to return plaintiffs' money upon demand. It is undisputed that plaintiffs have been damaged by the loss of their funds. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did breach the contract. Accordingly, plaintiffs motion for summary judgment on their breach of contract claim is granted.

## D. Breach of Covenant of Good Faith and Fair Dealing

The duty of good faith and fair dealing between parties to a contract is well recognized under New York law. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283 (1995) ("implicit in every contract is a covenant of good faith and fair dealing")). In order to establish a prima facie case for breach of the covenant of good faith and fair dealing, plaintiffs must show that defendants engaged in conduct that had the effect of destroying or injuring the rights of plaintiffs to receive the benefits of their contracts. *See Dalton v. Educational Testing Serv.*, 87 N.Y.2d 334, 389, 639 N.Y.S.2d 977 (1995).

Barry and the Leverage Group promised to provide plaintiffs with fixed interest, to ensure that the principal never decreased, and to return any funds upon request in exchange for plaintiffs' agreement to make deposits with defendants' companies. Plaintiffs accepted defendants' offer. Barry and the Leverage Group did not protect the principal and refused to honor plaintiffs requests for the return of the funds. Barry and the Leverage Group thereby destroyed the rights of plaintiffs to receive the benefits of their contracts, since the funds that were meant for investment were dissipated. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did not breach their covenant of good faith and fair dealing. Accordingly, plaintiffs motion for summary judgment on this claim is granted.

## E. Unjust Enrichment

"Unjust enrichment is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties have placed in the possession of one person money... under such circumstances that in equity and good conscience he ought not to retain it." *Manufacturers Hanover Trust Co. v. Chemical Bank*, 60 A.D.2d 113, 117, 559 N.Y.S.2d 704 (1st Dept. 1990) (quotations omitted). In order to establish a prima facie case for unjust enrichment in New York, plaintiffs must show (1) that the defendant benefitted; (2) at the plaintiffs' expense; and (3) that

'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any valid and enforceable contract, whether written or implied-in-fact. *See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 521 N.Y.S.2d 653 (N.Y. 1987).

Plaintiffs entered into a contract with Barry and the Leverage Group, and therefore cannot succeed on an unjust enrichment claim against those defendants. Plaintiffs also made out checks to Leverage Option Management, with whom they had no written agreement. Leverage Option Management benefitted at plaintiffs' expense, as it retained funds properly belonging to plaintiffs. Equity and good conscience require restitution. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that Leverage Option Management was not unjustly enriched. Accordingly, plaintiffs motion for summary judgment on their unjust enrichment claim is granted.

**F. Negligent Misrepresentation**

Plaintiffs allege a misrepresentation claim only against defendant Barry, against whom proceedings have been stayed. However, because plaintiffs seek reverse veil-piercing, this claim will be discussed.

To establish a prima facie case of negligent misrepresentation, plaintiffs must establish the following elements: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Federal Ins. Co. v. North Am. Specialty Ins. Co.*, 847 N.Y.S.2d 7, 13, 47 A.D.3d 52 (1st Dept. 2007). Barry told plaintiffs that they would receive fixed rates of return and that they could withdraw deposits at any time, intending that his statement would induce plaintiffs to open accounts with him. Plaintiffs relied on Barry's statements and made deposits in furtherance of his purpose. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did not commit negligent misrepresentation. Accordingly, plaintiffs motion for summary judgment on this claim is granted.

**G. Breach of Fiduciary Duty**

Under New York law, in order to establish a prima facie case for breach of fiduciary duty, plaintiffs must show (1) the existence of a fiduciary relationship and (2) a breach of a fiduciary duty. *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 37 (S.D.N.Y. 2002); *Nasso v. Seagal*, 263 F.Supp.2d 596, 617 (E.D.N.Y. 2003). "A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge." *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68, 282 A.D.2d 527 (2d Dept. 2001).

Plaintiffs allege the existence of a fiduciary relationship between themselves and defendants, because they entrusted defendants with their funds and did not have access to the books that would have shown that the funds were used for personal purposes. Plaintiffs reasonably relied on the superior expertise and knowledge in the area of investing of Barry, the Leverage Group, Leverage Option Management, and North American Financial. Viewing the facts in the light most favorable to defendants and drawing all inferences in their favor, no reasonable juror could find that defendants did not breach their fiduciary duties. Accordingly, plaintiffs motion for summary judgment on this claim is granted.

## IV. Damages

A plaintiff must substantiate a claim with evidence to prove

the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as... there was a basis for the damages specified." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997); *Tamarin v, Adam Caterers, Inc*., 13 F.3d 51, 54 (2d Cir.1993) (district judges are given much discretion to determine the necessity of an inquest).

*Miriam Greenberger*

Plaintiff Miriam Greenberger ("Greenberger") states that in October of 2001, in reliance of statements made by Barry concerning the safety of investments with him and the guaranteed return of 12.55%, she provided Barry with two personal checks made out to Leverage Option Management Co. totaling $185,000 for defendants to invest, for which she received a receipt. Declaration of Miriam Greenberger at ¶ 6, Ex. D. On the back of the receipt, Barry signed his name and wrote: "12.55% guaranteed minimum effective yield for calendar year 2001. Subsequent annual minimum yield will be announced in December. Principal does not fluctuate. *Philip Barry*. P.S. I don't believe in excuses." *Id*. at ¶ 7. Greenberger made additional deposits and withdrawals in 2002 and 2003, resulting in a total deposit with defendants of $135,000 during that period. *Id*. at ¶ 8. Greenberger reinvested her gains. *Id*. Greenberger's most recent Leverage Group statement, for the three months ending June 30, 2008, listed her account balance as

$304,136.52. *Id*. at Ex. E.

On September 28, 2008, Greenberger had a meeting with Barry to discuss the return of her money. *Id*. at ¶ 21. Barry gave Greenberger two checks from Leverage Management LLC, signed by Philip Barry: one for $150,000 and a second for $163,886.50. *Id*., Ex. F. Barry first explained that they were post-dated to allow him time to transfer money into her account, and then admitted that the accounts were frozen and the checks were not usable. *Id*. He wrote "subject to T.R.O. release" on the checks. *Id*.

Greenberger seeks the sum of $319,895.77 from defendants for her Leverage account. The sum consists of the account principal of $319,136.52 as of the most recent quarterly statement of June 30, 2008, and the investment gains since June 30, 2008, at the rate of 12.55% annual yield.

*Carl Gambello*

Carl Gambello ("Mr. Gambello") states that in reliance on statements made by defendants regarding the safety of investing with the Leverage Group, he gave Barry a check for $50,000 made out to Leverage Option Management for defendants to invest in 2002. Declaration of Carl Gambello at ¶ 7. Soon thereafter, Mr. Gambello gave Barry additional checks totaling $150,000, made out to Leverage Option Management. *Id*. at ¶ 10. Mr. Gambello continued to send checks with additional deposits for his investment account from 2003-2006. *Id*. at ¶ 14. Mr. Gambello last received a

quarterly statement from defendants in June of 2007, which
reflected a closing balance of $500,000. *Id*. at ¶ 16, Ex. D. In
early January of 2008, several investment-gain checks issued to
Mr. Gambello were returned as unpaid. *Id*. at ¶ 17. Mr. Gambello
met with Barry to demand that his account be closed. Barry replied
that he was unable to comply, but that he hoped to do so. *Id*. at ¶
18. Mr. Gambello states that Barry conceded at a July 18, 2008
meeting that Mr. Gambello is owed his account principal of
$500,000, together with $12,600 in investment gain checks for
2007, and the investment gain checks owed for the first two
quarters of 2008 totaling $30,000, less $2000 that Barry has wire-
transferred to him. *Id*. at ¶ 25. At a rate of 12.55% interest, as
of October 31, 2008, the account balance was $562,891.67.

*Carole Gambello*

Carole Gambello ("Ms. Gambello") states that in 2004, relying
on statements made by Barry regarding the stability and
profitability of investments made with him, she gave Barry a check
for $10,000 to open a Leverage account. Declaration of Carole
Gambello at ¶ 7. Ms. Gambello thereafter made additional
investment deposits in 2004, 2006, and 2007, including a $40,000
investment that was funded by money borrowed from her life
insurance policy, which loan requires her to pay interest of $2000
per year. *Id*. at ¶ 11. Ms. Gambello last received a quarterly
statement on March 31, 2008, reflecting that her account had a

closing balance of $97,207.07. *Id*. at ¶ 12, Ex. B. In May of 2008, Ms. Gambello confronted Barry about his failure to pay investment-gain checks, to which Barry responded that he had "been busy with tax stuff." *Id*. at ¶ 17. On June 6, 2008, Ms. Gambello requested that Barry close her account and return all funds, to which Barry responded that he was unable to do so. *Id*. at ¶ 19. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $104,483.92.

Adele Disarmato ("Ms. Disarmato") states that she made investment deposits of $1,000 on February 22, 1996, $200 on January 22, 1997, $5000 on February 10, 1997, $1000 on July 31, 1997, and $2,500 on November 29, 2000. Declaration of Adele Disarmato at ¶ 2. The most recent quarterly statement for her account, for the quarter ending March 31, 2008, reflected an account balance of $10,904.32. *Id.* at ¶ 3, Ex. A. An annual yield of 12.55% was guaranteed for this account. *Id*. at ¶ 4. Defendants have not made any of the required interest payments since the quarter ending September 30, 2007. *Id*. at ¶ 5. After that quarter, investment-gain checks in the amount of $417.13 for the first quarter of 2007 "bounced." *Id*. Ms. Disarmato has made no redemptions since receiving the March, 2008 statement. *Id*. at ¶ 6. At a rate of 12.55% interest, as of October 31, 2008, Ms. Disarmato's account balance was $12,536.86. *Id*. at ¶ 7.

*The Bray Plaintiffs*

Philip Bray ("Mr. Bray"), on behalf of himself, Ingrid Noreiko-Bray ("Ms. Bray") (collectively, the "Brays"), Noray Charitable Remainder Unitrust, and Label Service, In**c.,** states that in April of 2007, after a series of discussions during which defendant Barry assured Mr. Bray that the minimum yield of 12.55% would be guaranteed, that Leverage was a legitimate business enterprise, and that funds invested in Leverage could be withdrawn at any time, Mr. and Ms. Bray invested in $100,000 in Leverage via a check from their joint account. *Id*. at ¶ 9. At the same time, the Brays invested an additional $100,000 in Leverage on behalf of Noray Charitable Remainder Unitrust. *Id*. In April of 2007, the Brays invested an additional $100,000 via wire transfer, for which they received a deposit ticket. *Id*. at ¶ 10, Ex. A. In September of 2007, the Brays caused Label Service Inc. to invest $100,000 from its profit-sharing plan in Leverage, for which Label Service Inc. received an agreement stating the terms of the investment. *Id*. at ¶ 12, Ex. B. In November of 2007, Ms. Bray invested $100,000 of her own funds in Leverage, for which she received an investment agreement. *Id*. at ¶ 13, Ex. C. In February of 2008, the Brays sought to withdraw $200,000 from their investment accounts, but defendants sent them only $16,250.056. *Id*. at ¶ 19. The Brays then sought to withdraw an additional $100,000. *Id*. at ¶ 21. On May 10, 2008, the Brays received $10,000 from defendant Barry via wire transfer. To date, no other funds have been returned. *Id*. at

¶ 25. On March 31, 2008, the Bray plaintiffs received quarterly statements for their four accounts, reflecting the following balances: $127,498.03 for Ingrid Noreiko-Bray as trustee for Noray Charitable Remainder Unitrust; $201,967.75 for Philip Bray and Ingrid Noreiko-Bray (jointly); $107,150.90 for Label Services, Inc.; and $104,714.95 for Ingrid Noreiko-Bray. Bray Aff. at ¶ 22.

*The Monteleone Plaintiffs*

Frank Monteleone and Wendy Monteleone offer their December 31, 2007 statement, showing account balances of $137,410.06 for the Frank and Wendy Monteleone account, $18,870.69 for the Frank D. Monteleone account, and $18,740.32 for the Lila Monteleone account. Affidavit of Frank and Wendy Monteleone at ¶¶ 2, 7, 10, Ex. A, B, C. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $193,325.36. *Id*. at ¶¶ 4-11. Defendants have refused to return the funds as requested. *Id*. at ¶ 12.

Frances Monteleone offers her March 31, 2005 statement, showing an account balance of $231,938.06. Affidavit of Frances Monteleone at ¶ 2, Ex. A. Phillip Barry made payments of $3,165.08 and April 2008, totaling $6,330.16. *Id*. at ¶ 2. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $417,414.96 on the investment for this account. *Id*. at ¶ 4. Defendants have refused to return the funds as requested. *Id*. at ¶ 5.

Elyse Scileppi offers her September 30, 2007 statement

reflecting an account balance of $5,075.57,. Affidavit of Elyse Scileppi at ¶ 1, Ex. A. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $5,782.29. *Id*. at ¶ 3. Defendants have refused to return the funds as requested. *Id*. at ¶ 4.

Linda Rodriguez offers her June 30, 2007 statement reflecting an account balance of $4,736.14. Affidavit of Linda Rodriguez at ¶ 1, Ex. A. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $5,559.73. *Id*. at ¶ 3. Defendants have refused to return the funds as requested. *Id*. at ¶ 4.

*The Barglow Plaintiffs*

Margaret Schaefer Barglow offers her June 30, 2008 statement, documenting that her account held $103,770.50. Affidavit of Margaret Schaefer Barglow at ¶ 2, Ex. A. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $108,111.57. *Id*. at ¶ 4. Defendants have refused to return the funds as requested. *Id*. at ¶ 5.

Raymond Barglow and Pamela Montanaro offer their June 20, 2008 statement, which reflected that their opening balance was $50,676.13, that they deposited $100,000 with the Leverage Group on April 15, 2008, and that the closing balance of June 30 was $154,653.97. Affidavit of Raymond Barglow and Pamela Montanaro at ¶ 2, Ex. A. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $161,251.50. *Id*. at ¶ 4. Defendants have

refused to return the funds as requested. *Id*. at ¶ 5.

Charles Scull offers his May 16, 2008 statements reflecting a balance of $108,225 in one account, and $60,918 in another. Affidavit of Charles Scull at ¶¶ 2, 6, Ex. A, B. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $178,918.50. *Id*. at ¶ 4. Defendants have refused to return the funds as requested. *Id*. at ¶ 5.

Siri Scull offers a deposit letter from defendants, indicating that her May 5, 2008 balance was $100,000. Affidavit of Siri Scull at ¶ 2, Ex. A. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $106,275. *Id*. at ¶ 4. Defendants have refused to return the funds as requested. *Id*. at ¶ 5.

Robert Wolfson and Mahala Pugatch offer their June 30, 2008 statement listing a balance of $96,744 for one account, and submit a deposit ticket showing that they deposited $46,500 into another account on February 28, 2009. Affidavit of Robert Wolfson and Mahala Pugatch at ¶¶ 2, 6, Ex. A, B. At a rate of 12.55% interest, as of October 31, 2008, the account balance was $147,291.12. *Id*. at ¶¶ 4, 8. Defendants have refused to return the funds as requested. *Id*. at ¶¶ 5, 9.

*The Bianco Plaintiffs*

Gene Bianco offers a December 31, 2007 documenting that one Gene and Anita Bianco account held $295,595.56, and the March 31,

2008 statement documented that another account held $53,673.34.
Affidavit of Gene Bianco at ¶¶ 2, 6, Ex. A, B. At a rate of 12.55%
interest, as of October 31, 2008, the account balance was
$384,112.61. *Id.* at ¶¶ 4, 8. Defendants have refused to return the
funds as requested. *Id*. at ¶¶ 5, 9.

*Disposition*

The Greenberger, Gambello, Bray, Monteleone, Bianco, and
Barglow plaintiffs discussed above have offered sufficient
evidence to show that it is more likely than not that they are
owed the amounts claimed. Accordingly, their motions for summary
judgment as to damages on these claims are granted.

Under Rule 54(b) of the Federal Rules of Civil Procedure, I
find that there is no just reason for delay of entry of judgment
since, under the circumstances, speed is of the essence. The stay
on proceedings against defendant Barry, put in place by the
Bankruptcy Court, was recently lifted in favor of some plaintiffs,
and the bankruptcy action in the case of Barry, LLC was dismissed.
There may now be a race for priority. There is no reason to
penalize the diligent.

## CONCLUSION

For the reasons stated above, the motions for summary
judgment against defendants Leverage Group, Leverage Option
Management Co., Leverage Management, LLC, and North American

Financial on the issue of liability are granted in favor of the
Monteleone, Barglow, Bianco, Greenberger, Bray, and Gambello
plaintiffs. In addition, the following plaintiffs are awarded the
following amounts in compensatory damages: Miriam Greenberger is
awarded $319,895.77, Carl Gambello is awarded $562,891.67, Carole
Gambello is awarded $104,483.92, Adele Disarmato is awarded
$12,536.86, Ingrid Noreiko-Bray as trustee for Noray Charitable
Remainder Unitrust is awarded $127,498.03, Philip Bray and Ingrid
Noreiko-Bray are jointly awarded $201,967.75, Label Services, Inc.
is awarded $107,150.90, Ingrid Noreiko-Bray is awarded and
$104,714.95, Frank and Wendy Monteleone are awarded $193,325.36,
Frances Monteleone is awarded $417,414.96, Elyse Scileppe is
awarded $5,782.29, Linda Rodriguez is awarded $5,559.73, Margaret
Schaefer Barglow is awarded $108,111.57, Raymond Barglow is
awarded $161,251.50, Charles Scull is awarded $178,918.50, Siri
Scull is awarded $106,275, Robert Wolfson and Mahalia Pugatch are
awarded $147,291.12, and Gene and Anita Bianco are awarded
$384,112.61.

Defendants Leverage Group, Leverage Option Management Co.,
Leverage Management, LLC, and North American Financial are liable,
jointly and severally, for these damages. The Clerk is directed to
transmit a copy of the within to all parties and the assigned
Magistrate Judge, and to enter judgment in favor of the
Monteleone, Gambello, Greenberger, Bianco, Barglow, and Bray

plaintiffs, in the amounts described herein.


SO ORDERED.

Dated:     Brooklyn, New York
           January 29, 2009


                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                         United States District Judge