EASTERN DISTRICT OF NEW YORK
---------------------------------------X
Frances Monteleone et al.

                              Plaintiffs,        08-CV-1986
                                                 (CPS)(SMG)

                                                 08-CV-4605

          - against -

The Leverage Group, Leverage Option          MEMORANDUM
Management Co., Inc., Leverage Management     OPINION
LLC, North American Financial, Philip         AND ORDER
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                              Defendants.
---------------------------------------X
SIFTON, Senior Judge.


     Various groups of plaintiffs,[1] including the Del Monaco

plaintiffs, commenced actions against defendants the Leverage

Group, Leverage Option Management Co., Inc., Leverage Management,

LLC, North American Financial, Philip Barry ("Barry"), and Philip

Barry, LLC. These cases were consolidated for pretrial purposes

on November 17, 2008. On December 24, 2008, all plaintiffs filed

an Amended Consolidated Complaint, which included the following

---

[1] The list of plaintiffs is as follows: Frances Monteleone, Linda
Rodriguez, Elyse Scileppi, Frank J. Monteleone, Wendy Monteleone (the
"Monteleone plaintiffs"); Margaret Schaefer Barglow, Raymond Barglow, Pamela
Montanaro, Siri Scull, Charles Scull, Robert Wolfson, Mahala Pugatch (the
"Barglow plaintiffs"); Gene Bianco, Anita Bianco (the "Bianco plaintiffs");
Carl Gambello, Carole Gambello, Adele Disarmato (the "Gambello plaintiffs");
Miriam Greenberger (the "Greenberger plaintiff"); Philip M. Bray, Ingrid
Noreiko-Bray, Label Service, Inc., Noray Charitable Remainder Unitrust (the
"Bray plaintiffs); Amadeo Del Monaco, Piedad Del Monaco Michelle Del Monaco,
Brandon Del Monaco, Nicole Del Monaco, Rosa Armetta, Karamchad Balkaran, Gino
Citro, Steven Doyle, Keith Pennington, Joseph Fontana, Marco Fontana, Nunzio
Fontana, David Breiner, Marc Kowalski, George Trivino, German Valdavia, Mazine
Albert (the "Delmonaco plaintiffs"); Ann Marie Delia, William Delia, Robert
Sweeney, Veronica Sweeney, Tara Sroka f/k/a/ Tara Sweeney, Ludvig Haugedal
(the "Delia plaintiffs"); Brian Marchese, Ruth Marchese, and Michael Marchese
(the "Marchese plaintiffs").

additional defendants: Saint Joseph's Development Corporation and HK Holdings, LLC. The Amended Consolidated Complaint asserted RICO, fraud, conversion, misrepresentation, and breach of contract claims. Now before the court are a motion for partial summary judgment on damages against Philip Barry by plaintiffs Karamchad Balkaran, Keith Pennington, and the Estate of Joseph Fontana against defendant Philip Barry only, and motions to amend the complaint and for partial summary judgment on liability and summary judgment on damages by John Marini, Anna Marini (the "Marinis"). The aforementioned plaintiffs are all part of the Del Monaco plaintiffs' group. For the reasons stated below, the motions are granted in part and denied in part.

## BACKGROUND

Familiarity with the procedural history, parties, investment scheme, and prior summary judgment motions made in this case is assumed.[2]

On January 29, 2009, I granted the Monteleone, Barglow, Gambello, Greenberger, Bianco, and Bray plaintiffs' motions for summary judgment. Pursuant to my consolidation order, these six motions for summary judgment were treated as having been filed on behalf of all plaintiffs. Karamchad Balkaran, Keith Pennington,

---

[2]*See* this Court's opinions on plaintiffs' motions for attachment and summary judgment. *Monteleone v. Leverage Group*, 2008 U.S. Dist. LEXIS 78983 (E.D.N.Y. October 7, 2008); *Bray v. Leverage Group*, 2008 U.S. Dist. LEXIS 92383 (E.D.N.Y. November 4, 2008); *Monteleone v. Leverage Group*, 2008 U.S. Dist. LEXIS 8682 (E.D.N.Y. January 28, 2009).

and the Estate of Joseph Fontana, along with other Del Monaco plaintiffs, submitted affidavits indicating that their exposure to defendants' investment scheme mirrored that of the Monteleone, Barglow, Bianco, Gambello, Greenberger, and Bray plaintiffs. On February 6, 2009, I granted summary judgment as to liability to the Del Monaco and Delia plaintiffs. However, I denied summary judgment as to damages to all Del Monaco plaintiffs on the ground that they had submitted insufficient proofs to permit the calculation of damages.

At the same time as these proceedings were occurring in the District Court, a bankruptcy proceeding filed by Philip Barry on October 31, 2008 was taking place in the Eastern District of New York Bankruptcy Court. On January 23, 2009, several plaintiffs from the various plaintiff groups, including Karamchad Balkaran, Keith Pennington, and the Estate of Joseph Fontana, obtained relief from the automatic stay put in place by the bankruptcy court in favor of Barry,[3] which enabled them to proceed against Barry in the District Court. However, Judge Milton ordered that any collection efforts of the creditors for whose benefit the stay was lifted against Barry and his assets must occur in the Bankruptcy Court.

---

[3]Pursuant to federal law governing bankruptcy, an automatic stay operates as a stay of "the commencement or continuation... of a judicial... action... to recover a claim against the debtor that arose before the commencement of the case." 11. U.S.C. § 362(a). Thus, any action in a case against a debtor, not simply the enforcement of a judgment, is a violation of a bankruptcy stay.

At the time Bankruptcy Court Judge Milton lifted the stay on actions against Barry, no stay was in place in favor of companies associated with Barry, as none of those companies had declared bankruptcy. On March 5, 2009, upon petition of the Trustee in the Bankruptcy Court, Judge Milton extended the automatic stay in place over Philip Barry, individual, to cover all companies controlled by him.[4] The Trustee appointed by Judge Milton to marshal and manage the debtor's assets stated in a letter to the court of April 7, 2009 that "the automatic stay is indefinitely applicable to stay *any actions taken against all of the Debtor's Affiliated Entities*," with no exception listed for those in whose favor the stay had previously been lifted (emphasis added).

On April 14, 2009, the Marinis filed a motion to amend the consolidated complaint to include them as plaintiffs and for summary judgment. In their papers, the Marinis included an affidavit attesting to the fact that they were subject to the same fraudulent scheme alleged by all other plaintiffs to this action.[5] On April 28, 2009, I denied the motion on the ground

---

[4]The action is recorded in the docket; there is no corresponding order. These companies include all those named in the complaint by plaintiffs: Philip Barry, LLC, the Leverage Group, Leverage Option Management, Inc., North American Financial, Leverage Management, LLC, Lake Joseph Development Corp., and Saint Josephs Development Corporation. On April 2, 2009, Judge Milton extended the stay over HK Holdings, LLC, the one additional company named in the complaint but not covered by the March 5 order.

[5]The affidavit states that John Marini gave Philip Barry sums of money to invest, for which Barry promised returns of 12.55% annually. Affidavit of John Marini at ¶ 5. Barry told Marini that the money was invested in "safe investments" and that Marini could withdraw his money at any time. *Id*. Barry provided Marini with quarterly statements reflecting the promised interest

that the Marinis had not been granted relief from the stay of proceedings against Philip Barry and companies controlled by him put in place by the bankruptcy court, and therefor they could not proceed in any action against defendants. On June 4, 2009, Judge Milton of the bankruptcy court extended to the Marinis the relief from the automatic stay previously granted to other plaintiffs as to Philip Barry.

Plaintiffs Karamchad Balkaran, Keith Pennington, and the Estate of Joseph Fontana have now submitted affidavits in support of their application for summary judgment on damages. Plaintiffs John and Anna Marini informed the court that the bankruptcy court had granted them relief from the stay of proceedings against Philip Barry, and now seek consideration of their previously filed motions to amend the complaint to permit them to join the action and for summary judgment in their favor.

## DISCUSSION

### I. Amendment of Complaint

The decision whether to permit or disallow amendment of a complaint is within the district court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971). Rule 15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend should be "freely

---

rate. When Marini sought to withdraw the money at a later date, Barry refused. *Id.*

given when justice so requires." Fed. R. Civ. P. 15(a). In this case, the Marinis seek to amend the consolidated complaint so that they may become parties to this action. The claims made by the Marini plaintiffs are identical to those of the existing plaintiffs, and the facts asserted by the Marini plaintiffs are substantially similar. There is no indication that the late assertion of their claims would unfairly prejudice the defendants. Given the liberality in amending pleadings and the absence of any claim of bad faith or undue delay, the motion by the Marini plaintiffs to amend the complaint to join the action is granted.

## II. Liability

For the reasons stated in my January 29, 2009 opinion, I grant partial summary judgment to John and Anna Marini on the issue of liability, limited to the claims stated in the previous ruling. Pursuant to the order of the Bankruptcy Court of March 5, 2009 extending the automatic stay over all companies controlled by Philip Barry, which makes no exceptions for claimants who were granted relief from the automatic stay against Barry individually, summary judgment on liability is granted as against Philip Barry only.

## III. Damages

A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as... there was a basis for the damages specified." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Tamarin v, Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (district judges are given much discretion to determine the necessity of an inquest).

*John and Anna Marini*

John Marini states that, between May 1995 and July 2003, he and his wife invested the sum of $119,422.59 with defendants, at a guaranteed annual yield of 12.55%. Affidavit of John Marini at ¶ 7, Ex. A. From October 2001 through May 2008, the Marinis made withdrawals of $38,000. *Id.*, Ex. B. Pursuant to the June 30, 2008 statement issued by defendants, the Marinis are owed a balance by defendants of $182,449.66, which includes all interest accumulated as of that date. *Id.*, Ex. C. As of March 31, 1999, the Marinis are owed the sum of $199,722.63, which includes interest up until that date. *Id.* Despite repeated demand, Barry and his related companies have failed to return the money. *Id.* at ¶ 7.

*Karamchad Balkaran*

Karamchad Balkaran states that he invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly (36% annual) interest. Affidavit of Karamchad Balkaran at ¶ 5. The June 30, 2008 quarterly statement for the 12.55% interest account reflected a balance of $239,557.38. *Id*. at ¶ 7, Ex. A. As of March 31, 2009, at a rate of 12.55% interest, and additional $22,548.33 was owed on this account, with a resulting total of $262.105.71. *Id*.

The 3% monthly interest account did not generate quarterly statements. *Id*. at ¶ 8. However, plaintiff has provided a letter from Philip Barry dated February 8, 2008, stating that the "SPECIAL 3%" account had a principal balance of $205,000. *Id*., Ex. B. Barry paid plaintiff the monthly interest by sending him a check for $3,950 each month and depositing $2200 in interest into the 12.55% account. *Id*. at ¶ 9., Ex. A.[6] Beginning in October, 2007, the checks sent by Barry began to bounce. *Id.* Plaintiff has submitted a copy of eleven bounced checks from defendant Barry in the amount of $3,950 each. *Id*., Ex. C.[7] The calculation of the amount owed on the 3% interest account is as follows. Plaintiff

---

[6] Plaintiff's affidavit states that the amount was $2,000, but the statement indicates that the deposits were $2,200.

[7] The consistent dollar amount listed on these checks indicates that Mr. Balkaran did not withdraw any of the principal from his account.

is owed the sum of $2,200 monthly since July of 2008 (June of 2008 was the last time this amount was deposited into his 12.55% account), which amounts to $19,800 as of March 31, 2009.[8] Plaintiff is owed the sum of $3,950 monthly since November, 2007 (the first month that the checks began bouncing), which amounts to $63,200 as of March 31, 2009. The sum of these amounts is $83,000, which, added to the principal amount of $205,000, amounts to $288,000.[9]

The sum of the monies owed on the 12.55% annual interest and 3% monthly interest accounts is $550,105.71.

*Keith Pennington*

Keith Pennington states that he invested with defendants in various different accounts, some of which provided 12.55% annual interest and the others of which provided 3% monthly (36% annual) interest. Affidavit of Keith Pennington at ¶ 5. Plaintiff has submitted ten deposit slips showing that, between March 19, 2004 and January 12, 2005, plaintiff deposited a total of $1,447,200.00 into at least nine different accounts[10] with defendants. *Id*. at ¶ 7, Ex. A. Plaintiff states that these

---

[8]Plaintiff calculates what he is owed as of March 31, 2009 throughout his papers.

[9]Plaintiff arrives at a slightly different sum of $289,425. As plaintiff has not supplied his methods of calculation, I have undertaken to calculate the amounts based on other information provided by plaintiff.

[10]The deposit slips note different account numbers.

accounts provided 3% interest. *Id.* As proof of this assertion,

plaintiff attaches the reverse of various deposit slips from

defendants, wherein plaintiff alleges that Barry indicated the

number of years of the investment and the monthly return. *Id.* at

¶ 10, Ex. C. The notations relied upon by plaintiff are cryptic

and lack any reference to percentages, and accordingly are

insufficient to support plaintiff's claim that his combined

investments of $1,447,200.00 were subject to a 3% monthly

interest payment.[11] Furthermore, as plaintiff has provided no

account statement providing his total balance for these sums, it

is not possible to ascribe an interest rate to this sum or to

---

[11]On the back of the first deposit slip provided, the following text
appears:

        YR:
        1  - 3
        2  - 4
        3  - 3
        4  - 3
        5  - 3

The back of the second slip contains the following text:

        yr.1  4
        yr.2  3

The back of the third slip contains the following text:

        5 x .3

The back of the fourth slip contains the following text:

        Months
        3
        4
        4
        4

The back of the fifth slip contains the following text:

        4/4/4/4

ascertain whether any withdrawals were made. Therefore, Mr.
Pennington's request for damages is denied with respect to this
amount, without prejudice to a renewed motion supplying
additional documentary proof of the sums owed.

Plaintiff additionally submits three receipts for cashier's
checks made out to M.B.N.A. America, Chase Manhattan Bank, and
Quick and Reilley, amounting to $119,000, stating that Barry
requested that he make these deposits to his 3% account by making
checks payable to these other entities. *Id*. at ¶ 8. These deposit
amounts cannot be validated, as plaintiff supplies no additional
documentation showing that these deposits were held by Barry or
other defendants. Accordingly, Mr. Pennington's request for
damages is denied with respect to this amount, without prejudice
to a renewed motion supplying additional documentary proof of the
sums owed.

Plaintiff states that he maintained two separate accounts
bearing 12.55% interest annually. *Id*. at ¶ 11. The March 31, 2008
statement from defendants indicated that these accounts had
balances of $81,578.76 and $581,657.63, respectively. *Id*., Ex. D.
However, the statement indicates that the first account was held
by a "Doreen Pennington." *Id*. As plaintiff's name does not appear
on this account, plaintiff may not include this account in his
request for damages. Plaintiff states that he has not been paid
interest since the March 31, 2008 statement. *Id*. At a rate of

12.55%, plaintiff is due $85,164.37 on his account, which, added to the principal of $581,657.63, amounts to $666,822.

Mr. Pennington is owed $666.822.

*Estate of Joseph Fontana*

Lisa Balkaran, as the administrator for the estate of Joseph Fontana, her father, states that Mr. Fontana invested with defendants in various accounts providing 12.55% annual interest. Affidavit of Lisa Balkaran at ¶ 5.[12] Plaintiff submits account statements for four different accounts dated June 30, 2008, listing balances of $74,720.13, $1,394.51, $15,702.43, and $15,702.43, respectively, amounting to $107,519.50. *Id*. at ¶ 7, Ex. C. With interest at a rate of 12.55% through May 31, 2009, the total sum due is $119,110.50 on these four accounts.

Plaintiff submits copies of 14 checks marked "received" showing deposits of $1,800 each made out to defendants by Mr. Fontana between October, 1998 and March, 2001, which amount to $25,200.00. Plaintiff maintains that an interest rate of 12.55% annually should be applied to this sum. There is no indication on the checks or on the defendants' notation that these deposits were destined for an account bearing 12.55% interest. Moreover, plaintiff makes no claim that defendants failed to make interest

---

[12]The affidavit states that Mr. Fontana also had an account bearing 3% monthly interest, but plaintiff does not claim that the Estate is due that rate of interest on any of the accounts described.

payments on this account, nor do the documents submitted provide any information about such a claim. Accordingly, Ms. Balkaran's request for damages is denied with respect to this amount, without prejudice to a renewed motion supplying additional documentary proof of the sums owed.

Plaintiff submits a deposit slip showing a deposit of $51,500 into an additional account on September 19, 2005. *Id*. at ¶ 9, Ed. E.[13] Regarding additional activity on this account, plaintiff refers to Mr. Fontana's handwritten ledger, pursuant to which she concludes that an additional $25,000 was deposited into this account on September 12, 2005. *Id*. at ¶ 9, Ex. F. The relevant information in the ledger itself is illegible,[14] and accordingly it cannot be determined whether the document supports plaintiff's contention. I do not consider this sum in calculating the total amount due. Regarding the confirmed sum of $51,500 in this account, plaintiff has offered no information about whether defendants failed to make interest payments at any time. Nor has plaintiff offered any information as to whether sums were withdrawn from this account, thus making it impossible to calculate the amount due on the account. The request for damages

---

[13]The sum listed on the deposit slip is $50,000. However, the deposits listed are $1,500 and $25,000, plus a transfer of $25,000 from another account (information about which is not included in the papers), resulting in a sum of $51,500.

[14]The ledger shows a series of numerical calculations on the right hand side, and a series of dates on the left hand side. No account numbers are apparent. The entry circles by plaintiff has text that is entirely obscured.

is denied with respect to this amount, without prejudice to a
renewed motion supplying additional documentary proof of the sums
owed.

Having denied the motion for damages with respect to the two
latter accounts, I find that the Estate of Joseph Fontana is due
$119,110.50.

*Disposition*

Plaintiffs have offered sufficient evidence to show that it
is more likely than not that they are owed the amounts described
herein. Accordingly, their motions for summary judgment as to
damages on these claims are granted. Under Rule 54(b) of the
Federal Rules of Civil Procedure, I find that there is no just
reason for delay of entry of judgment since, under the
circumstances, speed is of the essence. New plaintiffs have been
making appeals to the bankruptcy court on a regular basis to
assist them in pressing claims against defendant Barry, and there
may be a race for priority. There is no reason to penalize the
diligent.

**CONCLUSION**

For the reasons stated herein, the motion by John Marini and
Anna Marini to amend the consolidated complaint to include their
claims and for partial summary judgment as to liability and for
summary judgment as to damages is granted as against Philip Barry

only. The motions by Karamchad Balkaran, Keith Pennington, and the Estate of Joseph Fontana for summary judgment as to damages is granted in part and denied in part. Plaintiffs are awarded the following amounts as against Philip Barry only: John and Anna Marini are awarded $199,722.63; Karamchad Balkaran is awarded $550,105.71; Keith Pennington is awarded $666.822; and the Estate of Joseph Fontana is awarded $119,110.50. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge, and to enter judgment in favor of the aforementioned plaintiffs against Philip Barry, in the amounts described herein. Any collection efforts on these judgments may proceed only with the approval of the bankruptcy court.

SO ORDERED.

Dated:    Brooklyn, New York
          June 16, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge