```
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
Frances Monteleone et al.

                         Plaintiffs,         08-CV-1986
                                             (CPS)(SMG)

                                             08-CV-4605
        - against -

The Leverage Group, Leverage Option           MEMORANDUM
Management Co., Inc., Leverage Management     OPINION
LLC, North American Financial, Philip         AND ORDER
Barry LLC, Philip Barry, HK Holdings,
LLC, and Joseph's Development Corporation,

                         Defendants.
------------------------------------------X
SIFTON, Senior Judge.
```

Various groups of plaintiffs,[1] including the Del Monaco plaintiffs, commenced several actions against defendant Philip Barry ("Barry") and companies controlled by him, including the Leverage Group, Leverage Option Management Co., Inc., Leverage Management, LLC, North American Financial, and Philip Barry, LLC. These cases were consolidated for pretrial purposes on November 17, 2008. On December 24, 2008, all plaintiffs together filed an

---

[1] The list of plaintiffs is as follows: Frances Monteleone, Linda Rodriguez, Elyse Scileppi, Frank J. Monteleone, Wendy Monteleone (the "Monteleone plaintiffs"); Margaret Schaefer Barglow, Raymond Barglow, Pamela Montanaro, Siri Scull, Charles Scull, Robert Wolfson, Mahala Pugatch (the "Barglow plaintiffs"); Gene Bianco, Anita Bianco (the "Bianco plaintiffs"); Carl Gambello, Carole Gambello, Adele Disarmato (the "Gambello plaintiffs"); Miriam Greenberger (the "Greenberger plaintiff"); Philip M. Bray, Ingrid Noreiko-Bray, Label Service, Inc., Noray Charitable Remainder Unitrust (the "Bray plaintiffs); Amadeo Del Monaco, Piedad Del Monaco Michelle Del Monaco, Brandon Del Monaco, Nicole Del Monaco, Rosa Armetta, Karamchad Balkaran, Gino Citro, Steven Doyle, Keith Pennington, Joseph Fontana, Marco Fontana, Nunzio Fontana, David Breiner, Mark Kowalski, George Trivino, German Valdavia, Mazine Albert (the "Del Monaco plaintiffs"); Ann Marie Delia, William Delia, Robert Sweeney, Veronica Sweeney, Tara Sroka f/k/a/ Tara Sweeney, Ludvig Haugedal (the "Delia plaintiffs"); Brian Marchese, Ruth Marchese, and Michael Marchese (the "Marchese plaintiffs").

Amended Consolidated Complaint, which included the following additional defendants: Saint Joseph's Development Corporation and HK Holdings, LLC.[2] The Amended Consolidated Complaint asserted RICO, fraud, conversion, misrepresentation, and breach of contract claims. Now before the court are separate motions for partial summary judgment on damages against Philip Barry filed by plaintiffs German Valdivia, Stephen Doyle, Mark Kowalski, Nunzio Fontana, Marco Fontana, and David Breiner.[3] Defendant Barry has filed no response to the motions. The aforementioned plaintiffs are all part of the Del Monaco plaintiffs' group. For the reasons stated below, the motions are granted in part and denied in part.

**BACKGROUND**

Familiarity with the procedural history, parties, investment scheme, and prior summary judgment motions made in this case is

---

[2] Plaintiffs allege in their affidavits that an additional company controlled by Barry was Barry Publications, LLC. However, this company was not named in the complaint.

[3] At a status conference on July 15, 2009, I instructed counsel to the Del Monaco plaintiffs to file damages claims on behalf of the nine remaining plaintiffs from the Del Monaco group whose claims have not yet been decided, with a return date of August 12, 2009. I stated that any plaintiffs whose motions were not filed by that date would have their actions dismissed for lack of prosecution. Counsel has submitted motions for summary judgment on behalf of six plaintiffs, whose claims are addressed in this opinion. Additionally, counsel has advised the Court by letter that Rosa Armetta and George Trivino affirmatively indicated to counsel that they did not wish to proceed further in this action, and that Gino Citro had not responded to counsel's communications regarding the motion for damages. Accordingly, the actions by Rosa Armetta, Georget Trivino, and Gino Citro are dismissed for lack of prosecution.

assumed.[4]

On January 29, 2009, I granted the Monteleone, Barglow, Gambello, Greenberger, Bianco, and Bray plaintiffs' motions for summary judgment. Pursuant to my consolidation order, these six motions for summary judgment were treated as having been filed on behalf of all plaintiffs. German Valdivia, Stephen Doyle, Mark Kowalski, Nunzio Fontana, Marco Fontana, and David Breiner, along with other Del Monaco plaintiffs, submitted affidavits indicating that their exposure to defendants' investment scheme mirrored that of the Monteleone, Barglow, Bianco, Gambello, Greenberger, and Bray plaintiffs. On February 6, 2009, I granted summary judgment as to liability to the Del Monaco plaintiffs. However, I denied summary judgment as to damages to all Del Monaco plaintiffs on the ground that they had submitted insufficient proofs to permit the calculation of damages.

At the same time as these proceedings were occurring in the District Court, a bankruptcy proceeding filed by Philip Barry on October 31, 2008 was taking place in the Eastern District of New York Bankruptcy Court. On January 23, 2009, several plaintiffs from the various plaintiff groups, including German Valdivia, Stephen Doyle, Mark Kowalski, Nunzio Fonatana, Marco Fontana, and

---

[4]*See* this Court's opinions on plaintiffs' motions for attachment and summary judgment. *Monteleone v. Leverage Group*, 2008 U.S. Dist. LEXIS 78983 (E.D.N.Y. October 7, 2008); *Bray v. Leverage Group*, 2008 U.S. Dist. LEXIS 92383 (E.D.N.Y. November 4, 2008); *Monteleone v. Leverage Group*, 2008 U.S. Dist. LEXIS 8682 (E.D.N.Y. January 28, 2009).

David Breiner, obtained relief from the automatic stay put in place by the bankruptcy court in favor of Barry,[5] which enabled them to proceed against Barry in the District Court. However, Bankruptcy Judge Milton ordered that any collection efforts of the creditors for whose benefit the stay was lifted against Barry and his assets must occur in the Bankruptcy Court.

Plaintiffs German Valdivia, Stephen Doyle, Mark Kowalski, Nunzio Fontana, Marco Fontana, and David Breiner have submitted affidavits containing additional evidence in support of their application for summary judgment on damages.

**DISCUSSION**

A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as... there was a basis for the damages specified." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Tamarin v, Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (district judges are given much discretion to determine the necessity of an inquest).

---

[5]Pursuant to federal law governing bankruptcy, an automatic stay operates as a stay of "the commencement or continuation... of a judicial... action... to recover a claim against the debtor that arose before the commencement of the case." 11. U.S.C. § 362(a). Thus, any action in a case against a debtor, not simply the enforcement of a judgment, is a violation of a bankruptcy stay.

*Stephen Doyle*

Stephen Doyle states that he invested $172,400 with defendants in several accounts bearing interest of 3% per month. Affidavit of Stephen Doyle at ¶ 5. The 3% monthly interest accounts did not generate quarterly statements. *Id*. Instead, Mr. Doyle invested with Barry "based on his verbal representations." *Id*.[6] Doyle states that he never made any withdrawal of his principal. *Id*. ¶ 7.

Mr. Doyle has submitted documentation in support of his claim that he made the above named deposits with defendants between March 19, 1994 and March 21, 1998. *Id.* ¶ 7. The documents submitted are as follows: (1) deposit slip dated March 19, 1994, indicating that Doreen DelMonaco deposited $5,300 into account number 3-192-94c; (2) deposit slip dated January 30, 1995, indicating that Stephen Doyle deposited $5,000 into account number 1-302-95c; (3) teller's check dated August 27, 1997, made out to Leverage Option Management in the amount of $10,000; (4) deposit slip dated March 4, 1998, indicating that Doreen Doyle deposited $60,000 into account number 4-041-98c; (5) teller's check dated March 11, 1998, made out to MBNA America in the amount of $20,000, stamped on the back as "received" by North American Financial, indicating an account number of 3-211-98c;

---

[6]Doyle states that although he did not invest in a 12.55% interest bearing account like so many other investors, he would accept that rate of interest on his investment if an issue of proof arises. Doyle Aff. at ¶ 5.

(6) deposit slip dated March 21, 1998, indicating that Doreen Doyle deposited $72,100 into account number 3-211-98c. *Id*.

In addition, Doyle submits an affidavit by Doreen Doyle, who states that she is the wife of Stephen Doyle, and that while many of the receipts are in her name, the money came from joint marital funds and she has assigned all right, title, and interest in the funds to Mr. Doyle. Affidavit of Doreen Doyle at ¶ 3. Mrs. Doyle further states that the March 11, 1998 teller's check in the sum of $20,000 was made payable to MBNA America at the request of Philip Barry. *Id*. ¶ 4. Stephen Doyle states that Doreen DelMonaco is his wife Doreen Doyle. Doyle Aff. at ¶ 7. Mr. Doyle alleges that he is owed interest on these accounts totaling $305,148.00, representing the amount of unpaid interest over a period of 55 months. *Id*. ¶ 8.[7] Doyle states that the total amount owed is $477,548.00. *Id*.

The evidence indicates that Stephen Doyle and his wife Doreen deposited a total of $172,400.[8] Doyle states that he never withdrew principal from the accounts with defendants. However, there is no evidence in the record indicating that the interest rate was to be 3% per month. Doyle has not submitted checks from

---

[7] Doyle offers no explanation why he took no action when defendants allegedly first became delinquent in their interest payments nearly six years ago.

[8] While the teller's check dated August 27, 1997, does not make reference to Mr. or Mrs. Doyle or their account numbers, the fact that plaintiffs possess the receipt is persuasive evidence that the check was drawn from their funds.

defendants making interest payments on his investment, from which the interest rate could be deduced, nor has he submitted bank statements, personal finance records, letters from Barry, or any notation regarding the interest amount. Also troubling is the assertion by Doyle that he is owed interest over a period of 55 months. There is no documentation to support the claim that defendants ceased paying interest at that time. Nor is there any indication of what actions Doyle took during the four years between the time that defendants allegedly stopped paying interest on Doyle's accounts and when the complaint was filed in the Del Monaco action, which calls into question the allegation that interest was not being paid. Accordingly, because I am unable to ascertain the interest rate that was allegedly promised on the principal, and because, even if an interest rate were ascertained, evidence is lacking as to how much interest is owed, damages must be limited to the principal sum.

The motion by Stephen Doyle for summary judgment as to damages is granted in the amount of $172,400.

*Mark Kowalski*

Mark Kowalski states that he invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly interest. Affidavit of Mark Kowalski at ¶ 4. A statement by defendants dated June 30,

2008 for the 12.55% interest account showed a balance of $21,290.53. *Id*. As of July 31, 2009, at a rate of 12.55% interest, an additional $2,894.62 was owed on the account, resulting on a total value of $24,185.15. *Id*

The 3% interest account did not provide quarterly statements. *Id*. ¶ 8. Instead, Barry made a verbal representation that the account would generate 3% interest monthly. *Id*. Kowalski submits a deposit slip dated March 2, 2007 showing a deposit of $51,500 into account number 3-029-07c. *Id*., Ex. C. Kowalski includes bank statements showing deposits of $1,500 into his account in March, April, and June (three deposits), August, and October of 2007, as well as transaction statements stating that Leverage Management wired $1500 deposits into his account in January, February, April, and June of 2008, which deposits Kowalski states were made by Barry as interest payments on his 3% account. *Id*. Ex. D. Kowalski states that he is owed 13 months of interest on this account, in the amount of $20,085.00, resulting in a total amount due on the 3% account of $71,585.00, and a total amount due on all accounts of $95,770. *Id*. ¶ 8.

Kowalski has submitted sufficient documentary evidence to establish his claim. Accordingly, his motion for summary judgment as to damages is granted. Kowalski is owed $72,790.53 in principal and $22,979.62 in interest.

*German Valdivia*

German Valdivia states that he invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly interest. Affidavit of German Valdivia at ¶ 4. A statement by defendants dated June 30, 2008 for the 12.55% interest account showed a balance of $2,778.89. *Id*. ¶ 7, Ex. C. As of June 30, 2009, at a rate of 12.55$ interest, an additional $318.83 was owed on this account, resulting in a total value for the account of $3,097.82.

As in the cases of the other plaintiffs, the 3% interest account did not generate statements. Valdivia claims that he made deposits of $122,500.00 into this account, which he substantiates with the following documents (all deposits are made to the same account number): (1) a deposit slip dated December 19, 2001 showing a deposit of $20,600; (2) a deposit slip dated January 25, 2002, showing a deposit of $10,000; (3) a deposit slip dated August 21, 2003, showing a deposit of $50,000; (4) a deposit slip dated May 2, 2006, showing a deposit of $20,000; and (5) a deposit slip dated September 27, 2006, showing a deposit of $10,000; (6) account statements for the 12.55% account showing a drop of $2,500, which Valdivia states was deposited into the 3% account. *Id*. Ex. D. Valdivia additionally submits copies of numerous checks from defendants to him between May 13, 2002 and September 10, 2007. *Id*. Ex. E. Valdivia states that these checks

reflect interest payments on his 3% monthly interest account, and the amounts stated in the checks substantiate Valdivia's claim.[9] Valdivia claims that he paid an additional $10,000 in cash to his 3% account in February 2007, which he substantiates by pointing to the increase in interest payments in the checks after that date. The checks indicate that Valdivia did not make withdrawals from his account. In September 2007, the bank returned an interest payment check as unpaid. *Id*. Ex. D. Valdivia states that he has not been paid interest on his account since that date, resulting in a delinquency of 22 months of interest payments, amount to a sum of $80,850.00. *Id*. ¶ 10.

Mr. Valdivia has submitted sufficient documentary evidence to establish his claim, ane accordingly his motion for summary judgment as to damages is granted. He is owed $125,278.89 in principal and $81,168.83 in interest.

*Nunzio Fontana*

Nunzio Fontana states that she invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly interest. Affidavit of Nunzio Fontana at ¶¶ 5, 8. A statement written by defendants dated March 31, 2008 recording funds deposited in the

---

[9]For example, the checks indicate monthly payments of $900, until the date when Valdivia deposited an additional $50,000 into his account, at which point the amount increases to $2,400. Subsequent increases in the amounts paid by the checks correlate with the dates of Valdivia's later deposits.

12.55% interest account confirmed a balance of $155,301.93. *Id*. Ex. A. As of July 31, 2009, at a rate of 12.55% interest, an additional $25,986.80 was owed on this account, resulting in a total value for the account of $181,288.73.

Ms. Fontana states that in 1998, she made an additional deposit of $30,000 with the defendants in an account bearing 3% interest monthly, but that she is unable to locate the receipt for this deposit. However, Ms. Fontana has submitted copies of fifteen checks from the Leverage Group to her in the amount of $900 each, which represents 3% of $30,000.[10] The checks run from February, 2007 to August, 2008, with some months missing. These checks are sufficient to corroborate Ms. Fontana's account of the sum that she invested $30,000 in the 3% account. However, although Ms. Fontana submits notices from her bank indicating that checks were being returned unpaid in 2007, it is not clear from what date interest on this account is owed to her. Accordingly, I calculate the interest owed from March 31, 2008, the date of Ms. Fontana's last statement on her 12.55% account through July 31, 2009, the date used by Ms. Fontana to calculate the amount of interest due. The interest due is $15,157.30, for a total due on this account of $45,157.30.

Summary judgment as to damages is granted to Nunzio Fontana

---

[10]Ms. Fontana submitted these copies directly to the court, prior to the filing by her attorney of the summary judgment motion on her behalf.

in the amount of $41,144.10 in interest and $185,301.93 in principal.

*Marco Fontana*

Marco Fontana states that he invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly interest. Affidavit of Marco Fontana at ¶¶ 5, 8. An account statement issued by defendants dated June 30, 2008 for the 12.55% account indicates a balance of $5,963.88. *Id*. ¶ 7, Ex. A. As of July 31, 2009, at a rate of 12.55% interest, an additional $810.93, for a total account value of $6,774.81.

Mr. Fontana states that he invested $82,400 in various 3% interest accounts, and that he did not make withdrawals of principal from these accounts. *Id*. ¶ 8. Mr. Fontana submits the following documents in support of his claim: (1) deposit slip dated September 25, 2005 indicating a deposit of $41,200 into account 9-251-05c; (2) deposit slip dated February 3, 2007 indicating a deposit of $41,200 into account 2-039-07c; (3) four checks made out to Marco Fontana from Leverage in the amount of $1200 each, dated September, October, November, and December 2005. *Id*. Ex. B. In addition, Mr. Fontana has separately submitted copies of seven checks made out to him by Leverage in the amount of $1200 each, dated September (three checks),

October, November, and December of 2007 and January of 2008.[11]

At a rate of 3% interest, an interest payment of $1200 indicates that the value of the principal is $40,000. Accordingly, from the evidence submitted by Mr. Fontana, it is not possible to substantiate the claim that there was $82,400 in the 3% interest bearing account. Nor is there any indication in the papers of when defendants allegedly stopped paying interest on this account. Accordingly, I find that the total due on this account is $56,032.00, representing a principal of $40,000, plus interest at 3% per month since June 1, 2008, compounded annually.

Marco Fontana is granted damages in the amount of $16,842.93 in interest and $45,963.88.

*David Breiner*

David Breiner states that he invested with defendants in two separate accounts, one of which provided 12.55% annual interest and the other of which provided 3% monthly interest. Affidavit of David Breiner at ¶¶ 4, 8. An account statement issued by defendants on September 30, 2007 lists a balance of $10,279.00. *Id*. Ex. B. Mr. Breiner states that he did not make any withdrawals of principal after July 6, 2007, and that accordingly he is owed interest for 22 months amounting to $2,325.00, for a

---

[11]Mr. Fontana submitted these copies directly to the court, prior to the filing by his attorney of the summary judgment motion on his behalf.

total amount due of $12,325.00 *Id*. ¶ 7.

Mr. Breiner next states that he invested $40,000 in a 3% account. *Id*. ¶ 8. He supports this claim with a deposit slip from defendants dated August 6, 2007, showing a deposit of $41,200 into account 8-069-07c. *Id*. Ex. C. Mr. Breiner states that he did not make withdrawals from this account, and that of the $41,200, $1,200 was "promissory monthly interest" on the principal amount. *Id*. ¶ 8. Mr. Breiner attaches a check from defendants to him dated August 22, 2007, in the amount of $1,200, which he submits as evidence that he was earning 3% monthly interest on his account. *Id*. Ex. D.

Mr. Breiner does not explain why he took no action when the defendants stopped paying interest on his accounts in the summer of 2007, fifteen months before the Del Monaco plaintiffs filed their complaint, which draws into question whether the interest payments were indeed delinquent. Additionally, Mr. Breiner has offered no bank statements indicating that checks were not honored. Accordingly, I consider only the principal sums for which there is documentary evidence. Summary judgment as to damages is granted to David Breiner in the amount of $51,479, representing his principal deposits.

## CONCLUSION

For the reasons stated herein, the motions for summary

judgment by plaintiffs are granted in part and denied in part. The plaintiffs are awarded the following amounts as against Philip Barry only: (1) Stephen Doyle: $172,400; (2) Mark Kowalski: $95,770.15; (3) German Valdivia: $206,447.42; (4) Nunzio Fontana: $229,446.03; (5) Marco Fontana: $62,806.81; (6) David Breiner: $51,479. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge, and to enter judgment in favor of the aforementioned plaintiffs against Philip Barry, in the amounts described herein. Any collection efforts on these judgments may proceed only with the approval of the bankruptcy court.

SO ORDERED.

Dated:    Brooklyn, New York
          August 22, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge